# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 21, 2005

## STATE OF TENNESSEE v. TOM ANDERSON

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-55293     Don R. Ash, Judge**

_____

**No. M2005-00217-CCA-R3-CD - Filed November 14, 2005**

_____

A Rutherford County Circuit Court jury convicted the appellant, Tom Anderson, of reckless endangerment committed with a deadly weapon and animal cruelty. The trial court sentenced him to concurrent sentences of one year for the reckless endangerment conviction and eleven months, twenty-nine days for the animal cruelty conviction. The trial court ordered the appellant to serve forty-five days in confinement on consecutive weekends and the remainder of his sentences on probation. On appeal, the appellant claims that the trial court erred by refusing to allow him to testify about two prior incidents in which the victim's dog acted aggressively. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Dana C. McLendon, III, Franklin, Tennessee, and John G. Mitchell, III (at trial), Murfreesboro, Tennessee, for the appellant, Tom Anderson.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Jennings Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Kristen Colinda testified that she was twelve years old at the time of trial and that her family lived next door to the appellant and his family. On September 10, 2003, the Colindas' Labrador retriever, Sosha, got out of the Colindas' yard and went swimming in the appellant's pond. Kristen

and her mother tried to get the dog out of the pond, but the dog would not come to them. The appellant, who drove by the pond with his children, saw them trying to get the dog and stopped his van. The appellant got out of the van, and the dog barked at him. The appellant said, "I think you want to bite me, you're mine," got back into his van, and drove to his house. A few minutes later, the appellant returned to the pond, got out of his van, and began shooting at the dog. He fired three shots, and the third one hit the dog. Kristen testified that just before the shooting, the dog had been running around. She said that she did not know if the dog charged at the appellant or growled at him. She also did not recall seeing the dog jump up onto the door of the appellant's van.

Josephine Colinda, Kristen Colinda's mother, testified that on the morning of September 10, 2003, Sosha got out of their yard and went swimming in the appellant's pond. Mrs. Colinda and Kristen went to the pond and tried to get the dog. The appellant parked his van near the pond, yelled at the Colindas, and asked what they were doing. Mrs. Colinda told the appellant that she was trying to get her dog. She stated that the dog growled at the appellant and that he said, "[Y]ou're going to growl at me, I'm going to shoot you." The appellant drove back to his house and returned to the pond about five minutes later. The appellant began shooting at the dog while Mrs. Colinda and Kristen yelled at the appellant, telling him not to shoot. Mrs. Colinda stated that Kristen was about twenty feet away from the appellant while the appellant was shooting at the dog and that the dog was about three feet away from Kristen. The appellant shot the dog, and Mrs. Colinda ran back to her house in order to tell her oldest daughter to call the police. On cross-examination, Mrs. Colinda testified that she owned seven Labrador retrievers and that animal control officers had once told her to keep her dogs penned up. She stated that she did not recall Sosha's ever having chased the appellant or his family. She said that Sosha did not go after the appellant on September 10 and that the dog did not get close to the appellant's van.

Deputy Jay Jones testified that he was dispatched to the scene on September 10 in response to a report that someone had shot an animal. When he arrived, he talked with Josephine Colinda, who was hysterical. Deputy Jones then went next door to speak with the appellant. At first, the appellant was agitated and would not cooperate with Deputy Jones. However, the appellant calmed down and told the deputy that the Colindas' dog had growled at him. He also told the deputy that he had gotten his .22 caliber rifle out of his van and had shot the dog. Deputy Jones stated that the appellant never told him that the dog had attacked him, had charged at him, or had jumped up onto his van door. He stated that he did not believe the appellant was being truthful and arrested him.

Deputy Jim Trammel testified that he served as backup for Deputy Jones on September 10. When Deputy Trammel arrived at the appellant's home, the appellant told the police that "the dog had been on his property numerous times and he'd had enough of it." He said that the appellant never told them that the dog had attacked him, had charged at him, or had bitten him.

Andrew Anderson, the appellant's thirteen-year-old son, testified for the State that Kristen Colinda was at least fifty feet away from the dog when his father shot it, and he denied telling the police that his father said to the dog, "[Y]ou're mine." Andrew also testified for the defense. He stated that on the morning of September 10, his father was going to drive him and his sister to the

bus stop. As they were driving by the pond, the appellant saw the Colindas. The appellant stopped his van, got out, and asked the Colindas what they were doing. Andrew stated that Sosha got out of the pond and ran toward the appellant. The appellant got back into the van just before the dog jumped up onto the driver's side door. The appellant told the Colindas to put the dog up and drove back to his house. The appellant then drove back to the pond, got a gun out of the van, and shot the dog. Andrew stated that a few months before this incident, he, his father, and some neighbors had been fishing in the pond when Sosha ran toward them. He said that all of the children got into a truck and that the dog was growling at them and showing her teeth.

The appellant testified that on September 10, he was going to drive his children to the bus stop. As they were driving by the pond, the appellant heard screaming. He stopped at the pond and got out of the van. Sosha ran toward him, and he got back into his van and shut the door. The dog tried to get in the van through the window, and the appellant quickly rolled up his window. He then drove back to his house in order to get a gun clip for his rifle, which was in the van, and returned to the pond. The appellant got out of the van and told the Colindas to put up the dog. The dog charged at the appellant again, and he shot at it but missed. The appellant shot at the dog four more times before hitting it. He said that the dog was very aggressive and that Kristen Colinda was at least seventy-five feet away from the dog when he shot it. He stated that his family had had problems with the dog before. He stated that sometime before the incident in question, he, his children, his neighbor, and his neighbor's children had been fishing in the pond when Sosha ran toward them, growling and showing her teeth.

Veterinarian Yvette Markum testified that she treated the Colindas' Labrador retriever on September 10. The dog suffered from severe shock, had a fractured vertebrae, and had a bullet lodged in her thoracic area. The dog's spine had been partially severed, and the dog was permanently paralyzed in her hind legs. She said that the dog was about one and one-half years old at the time of the shooting and that the Colindas decided to euthanize it. She stated that the dog was at her office for two days and that the dog never acted aggressively toward her or her staff. She said, however, that the dog was medicated while in her office.

The appellant was charged with reckless endangerment committed with a deadly weapon and aggravated animal cruelty. The jury convicted him of the reckless endangerment charge, a Class E felony, and the lesser included offense of animal cruelty, a Class A misdemeanor. The trial court sentenced the appellant as a Range I, standard offender to one year for the reckless endangerment conviction and eleven months, twenty-nine days for the animal cruelty conviction. The trial court ordered the appellant to serve forty-five days in jail over consecutive weekends and serve the remainder of his sentences on probation. The trial court also fined the appellant five hundred dollars, ordered him to complete an anger management course, ordered him not to have any weapons while on probation, ordered him to pay two hundred fifty dollars in restitution to the Colindas, and ordered him to stay away from the Colindas and their property.

## II. Analysis

3

The appellant claims that the trial court erred by refusing to allow him to testify about two prior incidents in which Sosha acted aggressively. He contends that prior evidence of the dog's aggression was admissible to show that he feared for his safety and was justified in shooting the dog. The State claims that the trial court properly excluded the evidence. We agree with the defendant that the trial court erred. However, we conclude that the error was harmless.

In a pretrial hearing, the appellant testified about three prior incidents involving the Colindas' dog. The appellant testified that in the summer of 2002, he was in his barn and went outside to wash his hands. He stated that a pack of the Colindas' Labrador retrievers chased him back into the barn, that he telephoned the sheriff's department, and that he waited in the barn for the police. The appellant testified that one of the dogs was Sosha and that he recognized the dog because it was white in color while the other dogs were yellow. He said that Sosha weighed thirty to fifty pounds at that time. On cross-examination, the appellant testified that he was "pretty sure" one of the dogs was Sosha. The State asked the appellant, "If you were to find out that on that day she was eight weeks old, do you have any reason to dispute that?" and the appellant said, "No." The appellant also testified that two months before the shooting, he saw Sosha and another dog kill a wild goose on his property. Finally, the appellant testified about the incident in which he, his children, his neighbor, and his neighbor's children were fishing at the pond. He stated that Sosha "come out at us with full force" and that he and his neighbor put their children in the back of his truck.

The trial court ruled that the appellant could not testify about the barn incident because there was no clear and convincing evidence that Sosha was one of the dogs involved. The trial court also ruled that the appellant could not testify about the incident involving the goose. The trial court stated, however, that it would instruct the jury that in determining whether the defendant's use of force and defending himself was reasonable, it could consider the dog's "previous acts of violence as revealed to the defendant by previous acts of aggression."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also Tenn. R. Evid. 403. In this case, the appellant's theory of defense was that he was justified in shooting the dog because he feared for his safety. We agree with the appellant that, based upon his theory of defense, the barn and goose incidents were relevant to show that Sosha had been aggressive in the past and that the appellant reasonably feared for his safety. Thus, we believe the trial court erred by excluding the testimony. Nevertheless, we hold that the error was harmless. The evidence shows that when the appellant initially arrived at the pond, the dog growled at him and the appellant said, "[Y]ou're going to growl at me, I'm going to shoot you." The appellant then left the scene, went to his home, and returned with his rifle. While Josephine and Kristen Colinda tried to grab Sosha, the appellant fired at least three shots, hitting the dog once. The jury heard some evidence of the dog's prior aggressive behavior, yet rejected the appellant's defense theory. Given that the appellant left the scene and returned with his rifle, we conclude that the trial court's error was harmless. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

4

## III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE